# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROCKWELL AUTOMATION INC.,
    Plaintiff,

  v.                                     Case No. 06C904

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH PA
    Defendant and
    Cross-Plaintiff,

  v.

TRAVELERS INDEMNITY CO. and
FEDERAL INSURANCE CO.,
    Defendants and
    Cross-Defendants.

## DECISION AND ORDER

Plaintiff Rockwell Automation, Inc. ("Rockwell") originally brought this action in state court against its excess liability insurers, defendants National Union Fire Insurance Company ("National"), Federal Insurance Company ("Federal") and The Travelers Indemnity Company ("Travelers"), seeking a declaration that defendants are obligated under their policies to pay accrued interest on a $97.6 million Missouri judgment against plaintiff. Defendants removed the case to federal court based on diversity of citizenship. Subsequently, plaintiff and National entered into a settlement agreement pursuant to which National agreed to pay the post-judgment interest and costs and seek reimbursement from Federal and Travelers. National then brought a cross-claim against Federal and Travelers, which Federal and Travelers now move to dismiss. Alternatively, Federal and Travelers

move for summary judgment. National moves for partial summary judgment. Federal and Travelers make two arguments: (1) that the Coverage sections of their policies do not cover post-judgment interest, and (2) even if they do, Federal and Travelers are not obliged to pay such interest because National assumed Rockwell's defense. I conclude that both of these arguments have merit.

## I. FACTS

In February 1999, a boiler at a Kansas City Power & Light ("KCPL") power plant exploded, and KCPL sued several defendants including Rockwell. The jury found Rockwell liable for $97.6 million, but the judge reduced the award to $190,867. Rockwell appealed, and the state court of appeals reinstated the jury's verdict . The Missouri Supreme Court declined review, and the trial court entered judgment against Rockwell for $97.6 million in damages and $18.1 million in post-judgment interest.

At the time of the explosion, Rockwell was self-insured up to $2 million per occurrence. Travelers provided the next layer of coverage through an excess liability policy with a $1 million limit. National provided the third layer through an umbrella policy with a $50 million limit, and Federal provided the fourth layer through an excess policy with a $50 million limit. Travelers provided a fifth layer through an excess policy with a $50 million limit.[1]

In the proceedings in the trial court in the KCPL lawsuit, Rockwell retained and paid for its own counsel. However, National engaged in settlement discussions with KCPL.

---

[1] The Travelers excess policy was originally issued by Gulf Insurance Company ("Gulf"), a Travelers subsidiary. When I refer to the Travelers policy in this decision, I refer to Travelers's $50 million excess policy, not its $1 million policy.

2

National also retained its own law firm, Clausen Miller ("Clausen"), to assist Rockwell's counsel and to identify appellate issues. Clausen entered an appearance in the trial court and argued an issue involving the form of the verdict. After the trial, National retained Attorney Susan Ford Robertson to represent Rockwell and paid her fees. Robertson handled Rockwell's post-trial motions and its appeal to the state court of appeals and state supreme court.

## II. DISCUSSION

I consider Federal and Travelers's motion to dismiss under the Fed. R. Civ. P. 12(b)(6) standard. I accept National's allegations as true and ask whether National has a viable legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). In addressing the motion, I consider the insurance policies because National refers to them in its pleading, and they are central to its claim. See Fed. R. Civ. P. 10(c); 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002).

In a diversity case, I apply state substantive law including choice of law rules. Wood v. Mid-Valley, Inc., 942 F.2d 425, 426 (7th Cir. 1991). I apply the law of the forum unless the parties point to an outcome-determinative conflict among potentially applicable state laws. See id. at 426-27. In the present case, the parties do not point to an outcome-determinative conflict among potentially applicable state laws as to the question of whether, leaving aside the assumption of defense issue, the policies in question cover post-judgment interest. Therefore, as to this question, I apply the law of the forum, i.e., Wisconsin law.

In interpreting an insurance policy, I seek to ascertain what the parties intended by the words they used. Sprangers v. Greatway Ins. Co., 182 Wis. 2d 521, 536 (1994);

3

Limpert v. Smith, 56 Wis. 2d 632, 640 (1973). I give the words in the policy their plain and ordinary meaning and read them as a reasonable insured would. Gen. Cas. Co. v. Hills, 209 Wis. 2d 167, 175 (1997). If the policy language is unambiguous, I apply it. City of Edgerton v. Gen. Cas. Co., 184 Wis. 2d 750, 751 (1994). I read the policy as a whole, Tempelis v. Aetna Cas. & Sur. Co., 169 Wis. 2d 1, 9 (1992), and read specific provisions as qualifying the meaning of more general terms. Capital Invs., Inc. v. Whitehall Packing Co., 91 Wis. 2d 178, 195 (1979); see also 11 Richard A. Ford, Williston on Contracts, § 32.10 (4th ed. 2000). Finally, I attempt to give reasonable meaning to each provision in the policies without rendering any superfluous. DeWitt, Ross & Stevens S.C. v. Galaxy Gaming & Racing, Ltd P'ship, 273 Wis. 2d 577, 597 (2004).

The National policy contains two sections relevant to the issue of post-judgment interest. The "Coverage" section obligates the insurer to pay "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay" (emphasis added), and the "Defense" section provides that "[w]hen we [the insurer] assume the defense of any claim or suit . . . we will pay . . . all interest that accrues after entry of judgment." (O'Connell Aff. Ex. C, Ins. Agreement at Sec. I, II.) The Federal and Travelers policies are "follow form" policies, i.e., they track National's policy.[2]

---

[2]The Federal policy provides that Federal will pay "that part of loss . . . in excess of the limits of underlying insurance," and that "the terms and conditions of underlying insurance are made a part of this policy" (emphasis added). (Majka Aff. Ex. 2 at 1.) The Travelers policy provides that Travelers will pay "that amount of loss which exceeds the amount of loss payable by underlying policies," and that "the insurance afforded by this policy shall apply in like manner as the underlying insurance" (emphasis added). (O'Connell Aff. Ex. D, Ins. Agreement.)

4

Considered in isolation, the words "sums" in the Coverage section of National's policy, and "loss" in the Coverage sections of the Federal and Travelers policies, arguably include post-judgment interest. However, as stated, I read more specific language as qualifying the meaning of more general terms, and I attempt to give meaning to each provision in the contract. So read, the policies are unambiguous and the words, sums and loss in the Coverage sections do not include post-judgment interest. This is so because the language in the Defense section requiring payment of post-judgment interest when the insurer assumes the defense of a suit limits the scope of the words, sums and loss.

National argues that the whole point of subsection B of the Defense section, which relates to assuming the defense, is to indicate that the expenses listed, including post-judgment interest, are to be paid on top of rather than within the policy limit. However, the language and structure of the Defense section undercut this argument. The language requiring the insurer to pay the expenses when "we assume the defense" would be rendered superfluous if the words sums and loss already included such expenses. Further, if the point of Subsection B is as National suggests, the provision stating that "expenses . . . are in addition to [policy limits]" would not be tucked away in an obscure sentence at the end of the subsection.

This reading of the policies is supported by the only on-point case that I have found, Hooters of Augusta, Inc. v. Am. Global Ins. Co., No. 04-11077, 2005 WL 3292089, at *8 (11th Cir. December 6, 2005). Construing provisions virtually identical to those in the National policy, the Hooters court held that a "harmonious interpretation of the contract provisions" is possible only by reading the language of the Coverage section as a general statement of the insurer's obligations and the language of the Defense section as a specific

5

provision governing the insurer's obligation to pay post-judgment interest. Id. The court then concluded that the specific provision controlled and required the insurer to pay post-judgment interest only if it assumed the insured's defense or was obligated to assume such defense and failed to do so. Id.

This interpretation is consistent with the purpose of post-judgment interest, which is to encourage prompt payment of judgments and, if payment is not prompt, to compensate the judgment-creditor for the time value of the use of its money. See Nelson v. Travelers Ins. Co., 102 Wis. 2d 159, 168 (1981). Because the entity that controls the defense controls the length of time in which interest accrues, a policy imposing liability for post-judgment interest on such entity makes sense.

In the present case, National does not contend that either Federal or Travelers assumed Rockwell's defense. Therefore, Federal and Travelers are not obliged to reimburse National for post-judgment interest, and their motion to dismiss National's cross-claim must be granted.

As an alternative basis for my decision, I conclude that even if sums and loss include post-judgment interest, Federal and Travelers are not obliged to pay such interest because National assumed Rockwell's defense. Because, in addressing this issue, I consider factual matters, I apply the summary judgment standard of review. See Fed. R. Civ. P. 56(c). Under this standard, I may grant a motion only if there is no genuine issue of material fact, and taking all facts in the light most favorable to the non-movant – here, National – no reasonable jury could return a verdict in its favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

National argues that I should apply California law to the interpretation of the policies, because California law would produce a different result than Wisconsin law on an important issue relating to whether it assumed Rockwell's defense. National contends that the word "all" in its policy has different meanings under California and Wisconsin law, and that, under California law, if National assumed Rockwell's defense, it would only have to pay all interest on the portion of the judgment that its policy covered, whereas, under Wisconsin law, it would have to pay all interest on the entire judgment. Therefore, I must address the question of what state's law governs the interpretation of the policy. In contract disputes, Wisconsin courts apply the law of the state with which the contract has its most significant relationship. Handal v. Am. Farmers Mut. Ins., 79 Wis. 2d 67, 73 (1977). Under this approach, a court analyzes both the qualitative and quantitative significance of the contacts. Urhammer v. Olson, 39 Wis. 2d 447, 450 (1968). "Relevant contacts include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the respective domiciles, places of incorporation and places of business of the parties." Hystro Prods., Inc. v. MNP Corp., 18 F.3d 1384, 1387 (7th Cir. 1994).

National issued its policy to Rockwell from an address in Pennsylvania. Additionally, National issued the policy to Rockwell at a Pennsylvania address. National is also domiciled and incorporated in Pennsylvania. The only connection between the National policy and California is that a revised declarations page dated several months after National issued the policy lists Rockwell's California address. National suggests that it be allowed to engage in additional discovery but provides no reason to believe that any additional California connection would turn up, and the prospect seems remote. Because

7

of the breadth of Rockwell's operations, the other contacts are inconclusive. Thus, the policy's most significant contacts are with Pennsylvania. However, there is no outcome-determinative difference between the law of Pennsylvania and that of Wisconsin with respect to the issue in question. Therefore, I will analyze the issue under Wisconsin law.

In opposing Federal and Travelers's alternative argument, National first contends that it had no duty to defend Rockwell and therefore could not have assumed its defense. However, the language and the structure of the policy undercut this argument. The word "assume" means "to take up or into," Webster's Third New Int'l Dictionary Unabridged 133 (1986), and a party may take up a project without having a duty to do so. In addition, the policy contains separate "duty to defend" and "assume the defense" subsections, and the duty to defend subsection does not include an obligation to pay post-judgment interest.

Next, National argues that it merely participated in but did not assume Rockwell's defense. However, when an insurer selects, supervises and pays for the lawyers who represent the insured, it assumes the insured's defense. See e.g., Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1076 (7th Cir. 2004). In the Rockwell/KCPL litigation, National engaged in settlement discussions on behalf of Rockwell, it participated in Rockwell's defense in the trial court, and it took over the defense at the post-trial and appellate stages. National chose Rockwell's appellate counsel and paid her expenses. Thus, National controlled Rockwell's defense during substantial periods in the litigation. I conclude that this involvement was sufficient to constitute assumption of the defense. Thus, National must pay all post-judgment interest. See McPhee v. Am. Motorists Inc. Co., 57 Wis. 2d 669, 672-76 (1973). Therefore, even if the Coverage section creates an

8

obligation to pay post-judgment interest, Federal and Travelers's obligations were relieved of it when National assumed Rockwell's defense.

### III. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that Federal and Travelers's motion to dismiss National's cross-claim is **GRANTED**.

**ALTERNATIVELY, IT IS ORDERED** that Federal and Travelers's motion for summary judgment is **GRANTED**.

**FINALLY, IT IS ORDERED** that National's motion for partial summary judgment is **DENIED**, and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 29 day of June, 2007.

/s_____
LYNN ADELMAN
District Judge